

**FILED & ENTERED**

**JUL 07 2020**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell  DEPUTY CLERK

<u>NOT FOR PUBLICATION</u>

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>PROTOTYPE ENGINEERING &<br>MANUFACTURING, INC.,<br><br>Debtor. | Case No. 2:17-bk-21018-RK<br><br>Chapter 7<br><br>Adv. No. 2:19-ap-01332-RK |
| WESLEY H. AVERY, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>LEYA TECHNOLOGIES, LLC; BAHRAM<br>BORDBAR, INDIVIDUALLY, AND AS<br>TRUSTEE OF THE BORDBAR FAMILY<br>TRUST; MALAHAT BORDBAR,<br>INDIVIDUALLY, AND AS TRUSTEE OF<br>THE BORDBAR FAMILY TRUST; SARA<br>BORDBAR; AND DOES 1-10,<br>INCLUSIVE,<br><br>Defendants. | **MEMORANDUM DECISION GRANTING<br>IN PART AND DENYING IN PART<br>DEFENDANTS' MOTION TO EXPUNGE<br>LIS PENDENS** |

     Pending before the court in this adversary proceeding is the motion of defendants Bahram and Malahat Bordbar (the "Bordbars"), individually and as Trustees of the Bordbar Family Trust (collectively, "Defendants"), to expunge the Notices of Pendency of Action filed by Plaintiff Wesley H. Avery, Chapter 7 Trustee (the "Trustee"), Electronic Case Filing ("ECF") 63 (the "Motion"). The Trustee and intervening plaintiffs Jon and Maria Ternstrom,

Cameron and Michelle Witzler, and Colette Carpenter, both individually and in her capacity

as administrator of the estate of Clayton O. Carpenter (collectively, the "Crash Victim

Claimants," and together with the Trustee, "Plaintiffs") opposed the Motion (the

"Opposition"). *Plaintiffs' Opposition to Motion to Expunge Lis Pendens,* ECF 77, filed on

March 27, 2020. Defendants filed their consolidated reply to Plaintiffs' Opposition on April

7, 2020 (the "Reply"). *Defendants' Reply in Support of Motion to Expunge,* ECF 79. A

hearing on the Motion was conducted on April 30, 2020. Brian L. Davidoff, of the law firm

of Greenberg Glusker Fields Claman & Machtinger LLP, appeared for Defendants, the

moving parties. Kevin M. Davis, of the law firm of Caplin & Drysdale, Chartered, and

Carmela T. Pagay, of the law firm of Levene, Neale, Bender, Yoo & Brill, L.L.P., appeared

for Plaintiffs, the responding parties.

## I.    BACKGROUND

On September 6, 2019, the Trustee commenced this adversary proceeding by filing

a complaint alleging fraudulent transfer, breach of fiduciary duty, and unjust enrichment

claims, among others. ECF 1. On September 19, 2019, the Trustee filed an amended

complaint. *Plaintiff's Amended Complaint,* ECF 9 (the "Amended Complaint"). In the

Amended Complaint, the Trustee alleged twenty-one claims for relief, including a claim for

substantive consolidation pursuant to 11 U.S.C. § 105(a) (the "Substantive Consolidation

Claim"). ECF 9 at 31 ("Claim for Relief XX").

On September 24, 2019, the Trustee recorded a "Notice of Pendency of Action [Lis

pendens] [Cal. Civ. Proc. Code § 405.20]" on two pieces of real property allegedly owned

by Defendants. *Notice of Recordation of Notice of Pendency of Action [Lis Pendens],* ECF

7, 8. The Trustee alleges that the first property, 140 E. 162nd Street, Gardena, CA 90248

(the "Gardena property"), was the business premises of debtor Prototype Engineering &

Manufacturing, Inc. ("Debtor"). ECF 9 at 3 (¶ 6); *see also Debtor's Petition and Schedules,*

ECF 1 at 1 (listing Gardena property as Debtor's principal place of business).[1]  The

---

[1]    The court takes judicial notice of its files and records under Federal Rule of Evidence 201.

Bordbar Family Trust (the "Bordbar Trust") leased the Gardena property to Debtor.  ECF 1 at 25 (listing Debtor as lessee and the Bordbar Trust as lessor of the Gardena property). The Trustee alleges that the second property, 21600 Brisbane Way, Yorba Linda, CA 92887 (the "Yorba Linda property") is the Bordbars' residence and the address for the Bordbar Trust.  ECF 9 at 11 (¶ 44); *see also* ECF 1 at 21 (listing Yorba Linda property as mailing address of Bordbar Trust); ECF 1-1 at 4 (listing Yorba Linda property as mailing address of Bahram Bordbar).  Together with the Gardena property, these two parcels of real property are referred to herein as "the Properties."

Defendants filed a motion to dismiss the Amended Complaint.  *Defendants' Motion to Dismiss Claims Pursuant to Rule 12(b)(6),* ECF 10, filed on October 7, 2019; *Defendants' Supplemental Motion to Dismiss the Twenty-First Claim for Relief,* ECF 37, filed on November 12, 2019.  On December 12, 2019, the court granted in part and denied in part the motion to dismiss the Amended Complaint, specifically dismissing the Substantive Consolidation Claim without prejudice, with leave to amend, but without any time limit for amendment of that claim.  *Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Plaintiff's First Amended Complaint*, ECF 57 at 15 (¶ 1) (the "December 2019 Order").

On February 4, 2020, the Crash Victim Claimants filed a complaint in intervention, joining the Trustee as Plaintiffs in this adversary proceeding pursuant to the court's Order Re: Stipulation Conveying Standing And Motion Of Crash Victim Claimants To Substitute Trustee As Plaintiff Or, In The Alternative, To Intervene, ECF 43.  *Complaint in Intervention,* ECF 60.  Because the court had dismissed the Trustee's Substantive Consolidation Claim in its December 2019 Order, the Crash Victim Claimants did not include a substantive consolidation claim in the Complaint in Intervention filed in the adversary proceeding.  ECF 60 at 2 (¶ B.).  The Complaint in Intervention does not otherwise substantively differ from the Amended Complaint, ECF 9.   Thus, the court refers to Plaintiffs, instead of only the Trustee, when discussing the Substantive Consolidation Claim and the Amended Complaint.  On February 27, 2020, Defendants filed the Motion, which requests that the

1   court expunge the two notices of pendency of action on the Properties.

2       California Code of Civil Procedure § 405.20 provides that "a party to an action who

3   asserts a real property claim may record a notice of pendency of action in which that real

4   property claim is alleged."  A notice of pendency of action is commonly referred to as a lis

5   pendens.[2]  At common law, "[a] lis pendens is a recorded document giving constructive

6   notice that an action has been filed affecting title or right to possession of the real property

7   described in the notice."  *Kirkeby v. Superior Court*, 33 Cal.4th 642, 647 (2004) (hereinafter

8   "*Kirkeby*") (citation omitted).  Defendants assert that no claim in the Amended Complaint

9   that survived their motion to dismiss is a "real property claim" within the meaning of

10  California Code of Civil Procedure § 405.4, and therefore, the lis pendens must be

11  expunged under California Code of Civil Procedure § 405.31.  *Defendants' Motion to*

12  *Expunge Lis Pendens,* ECF 63 at 12.  Defendants further contend that pursuant to

13  California Code of Civil Procedure § 405.38, the Trustee filed the lis pendens without

14  "substantial justification" and is liable to pay Defendants' their attorneys' fees and costs for

15  bringing the Motion.  *Id.* at 13-14.

16      In their Opposition to the Motion, Plaintiffs argue that although dismissed, the

17  Substantive Consolidation Claim provides a basis for maintaining the lis pendens as they

18  have leave to amend and add such a claim.  Plaintiffs specifically contend that the

19  Substantive Consolidation Claim is a "real property claim" under California Code of Civil

20  Procedure § 405.4 and the California Supreme Court's *Kirkeby* decision.  *Plaintiffs'*

21  *Opposition to Motion to Expunge Lis Pendens,* ECF 74 at 4 (citing *Amended Complaint*,

22  ECF 9 at 11, 16, 31 and 33 (¶¶ 44, 66, 180, and the Prayer for Relief at ¶ G)).  As

23  discussed above, in the December 2019 Order, the court dismissed the Substantive

24  Consolidation Claim without prejudice, with leave to amend, and without any time limit on

25  amendment.  ECF 57 at 15 (¶ 1).  Plaintiffs assert in the Opposition that they intend to

26  pursue the Substantive Consolidation Claim and that it is premature to expunge the lis

27

28  [2]     Hereinafter, the court's use of the term lis pendens encompasses the singular and the plural.

1  pendens where, as here, leave to amend has been granted.  ECF 74 at 5-6.

2  In their Reply to Plaintiffs' Opposition, Defendants argue that the Substantive

3  Consolidation Claim is not a "real property claim" under California Code of Civil Procedure

4  § 405.4 because the claim is a mechanism for making property available to satisfy claims,

5  not a direct claim to title or possession of real property.  *Defendants' Reply in Support of*

6  *Motion to Expunge,* ECF 79 at 6 (citing *Kirkeby,* 33 Cal.4th at 647, 649-650).  Pursuant to

7  California Code of Civil Procedure § 405.20, Defendants also contend that the lis pendens

8  must be expunged because the court stated that if Plaintiffs amend the Substantive

9  Consolidation Claim, they should do so by separate motion or adversary proceeding.

10 *Defendants' Reply in Support of Motion to Expunge,* ECF 79 at 10-11.

11 On April 10, 2020, the court on its own motion ordered Plaintiffs to file a sur-reply to

12 further address the issue of whether a substantive consolidation claim can be considered a

13 "real property claim" within the meaning of California Code of Civil Procedure § 405.4.  The

14 court ordered that any response of Defendants to Plaintiffs' sur-reply could be made orally

15 at a continued hearing on the Motion set for April 30, 2020.

16 On April 23, 2020, Plaintiffs filed their sur-reply, ECF 85 (the "Sur-reply").  In the Sur-

17 reply, Plaintiffs contend that the Substantive Consolidation Claim is a "real property claim"

18 because a substantive consolidation order would pass title to and right to possession of the

19 Properties from a non-debtor to the bankruptcy estate.  Plaintiffs therefore assert that the

20 Substantive Consolidation Claim unquestionably "affect[s] . . . title to, or the right to

21 possession of" real property.  *Plaintiffs' Sur-reply to Defendants' Reply in Support of Motion*

22 *to Expunge,* ECF 85 at 2-3 (quoting Cal. Civ. Proc. Code § 405.4).

23 On April 30, 2020, the court conducted a hearing on the Motion.  During the hearing,

24 Defendants' counsel raised a new argument in support of the Motion, referring to the recent

25 decision of the United States Supreme Court in *Roman Catholic Archdiocese of San Juan,*

26 *Puerto Rico v. Acevedo Feliciano,* 140 S.Ct. 696 (2020) (hereinafter "*Acevedo*"), which

27 casts doubt on the authority of courts to enter *nunc pro tunc* orders.  Defendants' counsel

28 contended that under *Acevedo,* the court may not grant substantive consolidation *nunc pro*

1   *tunc* to the petition date*,* and therefore, a substantive consolidation order would not make

2   the Properties part of the bankruptcy estate, and the court must expunge the lis pendens.

3   *April 30, 2020 Hearing on Defendants' Motion to Expunge Lis Pendens* at 11:47–11:49,

4   Adv. No. 2:19-ap-01332-RK (argument of Defendants' counsel).  In response, the court

5   ordered the parties to file supplemental briefing addressing *Acevedo*.

6   On May 7, 2020, Defendants filed a Supplemental Brief on Plaintiff's Request for

7   Nunc Pro Tunc Substantive Consolidation Order*,* ECF 86 ("Defendants' Supplemental

8   Brief").  On May 14, 2020, Plaintiffs filed a Joint Response to Moving Defendants'

9   Supplemental Brief*,* ECF 87 ("Plaintiffs' Supplemental Brief"), and the court took the matter

10   under submission.

11   Accordingly, Defendants' Motion presents five issues for resolution: (i) whether the

12   Substantive Consolidation Claim is a "real property claim" under California Code of Civil

13   Procedure § 405.4; (ii) if so, whether the court should nevertheless grant the Motion

14   because the Substantive Consolidation Claim is dismissed without prejudice; (iii) whether

15   the lis pendens must be expunged under California Code of Civil Procedure § 405.20

16   because any amended substantive consolidation claim may not be filed in this adversary

17   proceeding; (iv) whether the Trustee recorded the lis pendens on the Properties without

18   "substantial justification," and the court should award Defendants' their attorneys' fees and

19   costs as a prevailing party pursuant to California Code of Civil Procedure § 405.38; and, (v)

20   whether *Acevedo* precludes Plaintiffs from asserting that the Properties could be property

21   of the estate *nunc pro tunc* pursuant to a future substantive consolidation order, in order to

22   support the filing of the lis pendens.

23   Having considered all of the oral and written arguments of the parties, the court now

24   rules as follows.

25   **II.    DISCUSSION**

26   Under California law, a court's evaluation of whether a party has alleged a "real

27   property claim" supporting a lis pendens is a "demurrer-like analysis" that should be limited

28   to an examination of the allegations as pled.  *Kirkeby,* 33 Cal.4th at 648-649.  Thus, the

court must first discuss the allegations in the Amended Complaint[3] and the court's

December 2019 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss

the Amended Complaint.

The Amended Complaint alleged that it was a:

> proceeding to avoid and recover certain prepetition transfers, to substantively consolidate most of the Defendants into Prototype's estate, and to obtain other relief, all for the benefit of Prototype's estate and creditors, pursuant to 11 U.S.C. §§ 105, 544, 548, and 550, and applicable non-bankruptcy law.

*Amended Complaint,* ECF 9 at 4 (¶ 15).

In the Amended Complaint, Plaintiffs allege that before filing for bankruptcy

protection, Debtor repaired and manufactured aviation parts and components for the U.S.

Army, Navy, and Air Force.  *Id.* (¶ 16).  Plaintiffs allege that Debtor operated its business

under the "sole direction" of defendant Bahram Bordbar.  *Id.*  Plaintiffs also allege that

Bahram Bordbar caused Debtor "to certify that a U.S. Army helicopter [that Debtor] was

supposed to overhaul contained a critical cotter pin, when, in fact, it did not."  *Id.* at 5 (¶ 18).

They further allege that on January 15, 2014, the U.S. Army helicopter Debtor had

overhauled tragically crashed, resulting in the death of co-pilot Captain Clayton Carpenter,

U.S. Army, and substantial physical injuries to the other servicemen on board.  *Id.*  Plaintiffs

allege that following the helicopter crash, the United States began investigating Debtor,

which led to Bahram Bordbar being incarcerated and liable to the United States for nearly

$1 million in civil and criminal penalties.  *Id.* at 5 (¶ 19).

In the Amended Complaint, Plaintiffs allege that Debtor, not Bahram Bordbar, "paid

all the fines resulting from the civil settlement and plea agreement with the United States

Government" that arose from the investigation and subsequent charges brought against

Bahram Bordbar and Debtor.  *Id.* at 5-6 (¶¶ 19-22).  Plaintiffs also allege that between 2011

and 2017, Bahram Bordbar caused Debtor to transfer substantial amounts of cash and

other assets from Debtor to, or for the benefit of, Defendants, including assets of the Debtor

---

[3]    Undefined capitalized terms included herein have the meaning ascribed to them as set forth in the Amended Complaint, ECF 9.

that were either transferred to the Bordbar Trust, or used to purchase assets that were subsequently transferred to the Bordbar Trust. *Id.* (¶¶ 23-24). Plaintiffs essentially allege that Defendants regularly removed valuable assets from Debtor and used those assets as their own: transferring funds between Defendants and Debtor, entangling the affairs of Defendants and Debtor, and attempting to keep Debtor's assets out of the hands of creditors. *Id.* at 6-7 (¶¶ 22-28).

Specifically, Plaintiffs allege in the Amended Complaint that "[Bahram Bordbar] Routinely Removed Assets from [Debtor] to Keep the Assets from Creditors," *id.* at 10, including transferring substantial cash sums from Debtor to Defendants Bahram and Malahat Bordbar, *id.* (¶ 43), which funds the Bordbars

> either transferred . . . to the Bordbar Trust or used . . . to purchase real estate or other assets, which they then transferred to the Bordbar Trust. Indeed, following the helicopter crash and after commencement of the government's investigation concerning the crash, Barry and Molly transferred three pieces of real property to the Bordbar Trust without consideration, including the Gardena Property, which was leased to the Debtor and was the Debtor's business location; the real property located at 21600 Brisbane Way, Yorba Linda, California, which is the Bordbars' residence and the address for the Bordbar Trust;
> . . . .

*Id.* at 11 (¶ 44).[4] Plaintiffs additionally allege that at the time of the alleged cash transfers described above, Defendants' finances were entangled with Debtor's such that even though the funds "no longer appeared in [Debtor's] accounts, Debtor effectively maintained control over the funds. [Debtor] has never received any consideration for these transfers." *Id.* at 11 (¶ 46).

Similarly, Plaintiffs allege that Defendants Bahram and Malahat Bordbar "Commingled Their Personal Finances with [Debtor's] to an Astounding Degree," *id.* at 14, contending that

> [i]ndeed, the affairs of Barry and Molly and, by extension, the Bordbar Trust, are so entangled with Prototype's that consolidation will benefit all creditors. The time and cost of reconstructing the books and records of the Debtor to determine what each transaction was for, to whom it is

---

[4]    As defined in the Amended Complaint, ECF 9, "Barry" and "Molly" are Defendants Bahram and Malahat Bordbar. *Id.* at 3 (¶¶ 7-8).

attributable, and whether it was properly recorded therein, would be very expensive and extremely difficult. As such, identifying or allocating assets between Prototype, Barry, Molly, and the Bordbar Trust would not be possible without threatening the ultimate distribution to creditors from Prototype's estate.

*Id.* at 16 (¶ 66).  *See also id.* at 14-16 (¶¶ 56-67).

Plaintiffs in their Substantive Consolidation Claim against Defendants in the Amended Complaint specifically allege:

Plaintiff repeats and re-alleges all of the allegations of paragraphs 1 through 76.

The affairs of Barry and Molly Bordbar, the Bordbar Trust, and Leya are so entangled with those of the Debtor that consolidation will benefit all creditors.

Substantial time and expense would be required to even attempt to unscramble the financial and other commingling between the Debtor and Barry and Molly Bordbar, the Bordbar Trust, and Leya such that no identification or allocation of assets is possible.

In the alternative, any such effort will threaten realization of any net assets for all creditors. Substantive consolidation of these entities is necessary to avoid inequitable diminution of the Debtor's estate and to protect the Debtor's creditors.

It is, therefore, necessary and appropriate that the business affairs of Barry and Molly Bordbar, the Bordbar Trust, and Leya be administered and resolved in conjunction with the affairs of the Debtor in its bankruptcy estate.

*Id.* at 31 (¶¶ 179-183).  As indicated above, the Substantive Consolidation Claim includes all of the foregoing substantive allegations regarding the Debtor's alleged involvement in the helicopter crash and the alleged fraudulent transfer of Debtor's assets to Defendants. *Id.* (¶ 179).  In the Prayer for Relief in the Amended Complaint, Plaintiffs requested the following relief from the court on the Substantive Consolidation Claim:

On [the Substantive Consolidation Claim], that Barry and Molly Bordbar, the Bordbar Trust, and Leya be substantively consolidated into the Debtor's bankruptcy estate *nunc pro tunc* to the Petition Date, or such other date that the Court deems appropriate, and for substantive consolidation of such Defendants' assets and liabilities with those of the Debtor's estate;

*Amended Complaint,* ECF 9 at 33 (Prayer For Relief, ¶ G).

In its December 12, 2019 Order Granting in Part and Denying in Part Defendants'

Motion to Dismiss the Amended Complaint, the court specifically granted Defendants'

request to dismiss the Substantive Consolidation Claim because Plaintiffs "did not give

notice of the claim for substantive consolidation to the creditors of Defendants, who and

which are nondebtor parties[.]"  ECF 57 at 2 (citing *Leslie v. Mihranian (In re Mihranian),*

937 F.3d 1214, 1218 (9th Cir. 2019) ("A party moving for substantive consolidation must

provide notice of the motion to the creditors of a putative consolidated non-debtor.").

Because the court was dismissing the Substantive Consolidation Claim on insufficiency of

service grounds, the court expressly declined to reach the merits of whether the

Substantive Consolidation Claim should be dismissed for failure to state a claim upon

which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF 57

at 2.  The court also recommended that Plaintiffs file any amended substantive

consolidation claim as a separate proceeding.  *Id.*  The court's order dismissed the

Substantive Consolidation Claim without prejudice and with leave to amend, and the court

did not set any time limit on Plaintiffs' amendment of the Substantive Consolidation Claim.

*Id.* at 15.  Accordingly, although the Substantive Consolidation Claim has been dismissed,

it is not finally resolved since Plaintiffs may still file an amended claim.

As noted above, the five questions presented by the Motion before the court are: (i)

whether the Substantive Consolidation Claim is a "real property claim" under the California

expungement statutes; (ii) if so, whether the court should grant the Motion, even though the

to-be-amended Substantive Consolidation Claim was dismissed without prejudice; (iii)

whether the lis pendens must be expunged because any amended substantive

consolidation claim may not be filed in this action; (iv) whether the Trustee recorded the lis

pendens on the Properties without "substantial justification," and Defendants should be

awarded fees and costs; and (v) whether *Acevedo* precludes Plaintiffs from asserting that

the Properties could be property of the estate.  The court addresses each of these

questions in turn.

### i.  **PLAINTIFFS' SUBSTANTIVE CONSOLIDATION CLAIM IS A "REAL PROPERTY CLAIM"**

Whether a substantive consolidation claim may be a "real property claim" supporting a lis pendens under California law is apparently an issue of first impression.  The parties agree that California law governs this court's evaluation of the Motion. *See, e.g.*, *In re Gonzalez*, BAP No. CC-11-1162-MkCaPa, 2012 Bankr. LEXIS 673, 2012 WL 603747, at *5 (9th Cir. BAP Feb. 2, 2012) (affirming bankruptcy court's expungement of lis pendens pursuant to California Code of Civil Procedure § 405.30).  The most recent pronouncement of California law addressing the state's expungement statutes, the California Supreme Court decision in *Kirkeby v. Superior Court*, 33 Cal.4th 642 (2004) (holding that fraudulent transfer claim was a "real property claim") governs the court's analysis.

As set forth below, the court determines that Plaintiffs' Substantive Consolidation Claim is a "real property claim" within the meaning of California Code of Civil Procedure § 405.4 because the effect of an order for substantive consolidation of a non-debtor entity is the combining of that entity's assets and liabilities with the bankruptcy estate.  A substantive consolidation cause of action is a request that the bankruptcy court ignore legal forms and marshal assets into the court's jurisdiction because the property belonging, in form, to the putative consolidated entity is, in substance, property of the estate, 11 U.S.C. § 541(a).  Moreover, similar to the fraudulent transfer claim in *Kirkeby,* the ostensible "real property claim" here is an equitable remedy of substantive consolidation that disregards the corporate form by bringing non-debtor assets into the estate to satisfy creditors' claims. The court therefore concludes that an order consolidating a non-debtor's real property into the bankruptcy estate is more akin to the avoidance and recovery of real property by a fraudulent transfer claim, *Kirkeby*, 33 Cal.4th at 649, than the imposition of a constructive trust or equitable lien on real property, *Urez Corp. v. Superior Court,* 190 Cal.App.3d 1141, 1149, 235 Cal.Rptr. 837 (1987) (holding that constructive trust and equitable lien claims may not support a lis pendens).  Additionally, the precise impact of a substantive consolidation order—pooling assets and liabilities previously held by separate legal entities

into a single body—is not diminished when a case involves substantive rights relating to title of real property.  Thus, an order granting a substantive consolidation claim would "affect" title to and possession of real property within the meaning of California Code of Civil Procedure § 405.4 because the consolidated property becomes property of the bankruptcy estate available to satisfy the claims of all creditors.

Below, the court discusses the California expungement statutes and related authorities, and the nature and effect of substantive consolidation, before returning to examining the Amended Complaint in order to undertake the "demurrer-like analysis" that *Kirkeby* requires, 33 Cal.4th at 648.

### 1.    The California Lis Pendens Regime

A lis pendens is a "notice of the pendency of an action in which a real property claim is alleged."  California Code of Civil Procedure § 405.2.  A "real property claim" is defined, in pertinent part, as "a cause or causes of action in a pleading which would, if meritorious, affect . . . title to, or the right to possession of, specific real property[.]"  California Code of Civil Procedure § 405.4.  If an underlying action does not assert a "real property claim," as defined by California Code of Civil Procedure section 405.4, the owner of the subject property may move to expunge the lis pendens. California Code of Civil Procedure §§ 405.30 and 405.31.  The party opposing a motion to expunge lis pendens has the burden to demonstrate the existence of a "real property claim."  California Code of Civil Procedure § 405.30.

The court deciding a motion to expunge lis pendens based on the absence of a real property claim "shall order the notice expunged if the court finds that the pleading on which the notice is based does not contain a real property claim."  California Code of Civil Procedure § 405.31.  The limited determination of whether a complaint contains a "real property claim" is a "demurrer-like analysis," as stated in *Kirkeby*, 33 Cal.4th at 647-648.  Because "the purpose of a lis pendens is to notify 'the world' as to a claim on specific real property," at a minimum, a "real property claim" must identify the specific real property that is the subject of the lis pendens.  *Gale v. Superior Court*, 122 Cal.App.4th 1388, 1396, 19

1  Cal.Rptr. 3d 554 (2004) ("it is most assuredly not enough . . . merely to give notice to one's

2  adversary. Adversaries in all likelihood already know about any claims. It is third parties—

3  potential buyers or moneylenders—who need to be able to ascertain from the pleadings the

4  nature of any claim to specific real property.").

5       There are two lines of California lis pendens cases that the parties rely on: those

6  analyzing constructive trust and equitable lien causes of action, and those interpreting

7  fraudulent transfer claims.  In *Kirkeby*, the California Supreme Court discussed many

8  authorities examining whether a claim for constructive trust or equitable lien may support a

9  lis pendens but left that particular question unresolved.  33 Cal.4th at 650 n.7 ("Because it

10  is not presented in this case, we do not address the question of whether a claim that seeks

11  to impose a constructive trust or equitable lien may be a basis for a lis pendens.").

12       Before *Kirkeby,* the California courts evaluating expungement actions generally

13  adopted the view that "allegations of equitable remedies, even if colorable, will not support

14  a lis pendens if, ultimately, those allegations act only as a collateral means to collect money

15  damages."  *La Paglia v. Superior Court,* 215 Cal.App.3d 1322, 1329, 264 Cal.Rptr. 63

16  (1989) (quoting *Urez Corp. v. Superior Court,* 190 Cal.App.3d 1141, 1149, 235 Cal.Rptr.

17  837 (1987)); *Wardley Development Inc. v. Superior Court,* 213 Cal.App.3d 391, 394, 262

18  Cal.Rptr. 87 (1989) (same).  Consistent with this line of authority, the majority of California

19  courts had concluded that constructive trust and equitable lien claims are not "real property

20  claims" because the claims seek an interest in real property merely for the purpose of

21  securing a money damage judgment.[5]  When the California Court of Appeal examined

22

23

---

[5]    *See, e.g.*, *Burger v. Superior Court,* 151 Cal.App.3d 1013, 199 Cal.Rptr. 227 (1984) (constructive trust claim appended to breach of contract and fraud claims); *Deane v. Superior Court,*164 Cal.App. 3d 292, 210 Cal.Rptr. 406 (1985) (constructive trust claim appended to breach of contract claim); *Urez Corp. v. Superior Court,*190 Cal.App.3d 1141, 235 Cal.Rptr. 837 (1987) (constructive trust claim appended to fraud and deceit claims); *Wardley Development Inc. v. Superior Court,* 213 Cal.App.3d 391, 262 Cal.Rptr. 87 (1989) (equitable lien claim appended to default money judgment); *La Paglia v. Superior Court,* 215 Cal.App.3d 1322, 264 Cal.Rptr. 63 (1989) (constructive trust claim appended to waste, trespass, conversion, and accounting claims); *BGJ Associates, LLC v. Superior Court,* 75 Cal.App.4th 952, 89 Cal. Rptr.2d 693 (1999) (constructive trust claim appended to fraud and tort claims seeking compensatory and punitive damages); *Campbell v. Superior Court,*132 Cal.App.4th 904, 34 Cal.Rptr.3d 68 (2005) (constructive trust and equitable lien claims appended to conversion and money had and received claims).  *But see Coppinger v. Superior*

whether a fraudulent conveyance cause of action could be a "real property claim" in *Lewis
v. Superior Court,* 30 Cal.App.4th 1850, 37 Cal.Rptr. 2d 63 (1994) (hereinafter "*Lewis*") and
*Hunting World, Inc. v. Superior Court,* 22 Cal.App.4th 67, 26 Cal.Rptr. 2d 923 (1994)
(hereinafter "*Hunting World*"), however, it narrowed the equitable remedy exclusion that
had been adopted in *Urez Corp. v. Superior Court,* 190 Cal.App.3d at 1149.

In *Lewis*, the California Court of Appeal determined that the plaintiff's lis pendens
should be ordered expunged after looking to the purpose of the complaint as a whole and
determining that plaintiff's fraudulent transfer claim was, in essence, a claim for
constructive trust.  *Id.* at 1865 ("while in the abstract . . . a fraudulent conveyance claim can
support a lis pendens, the application of this rule in a given case depends on the specific
nature of the claim.").  In *Hunting World*, however, the California Court of Appeal concluded
that a fraudulent transfer claim was a "real property claim" where the plaintiff, after
receiving a money damages judgment against the debtor in federal court, sought to avoid
the debtor's transfer of real property to his wife.  *Id.* at 73 ("Extension of the *Urez*/*Wardley*
line of decisions is not warranted because the clear wording of the 'real property claim'
prong of lis pendens law covers a claim to set aside a conveyance of real property.").

In *Kirkeby*, the plaintiff alleged twenty-seven causes of action in her complaint,
"including a cause of action for fraudulent conveyance, and sought declaratory and
injunctive relief and damages in the aggregate amount of $4.9 million on behalf of herself"
and the allegedly looted corporation that plaintiff owned with her brother and his wife.  33
Cal.4th at 646.  The plaintiff alleged that her brother had obtained a loan from their
corporation but used the proceeds to purchase a residential income property that he
immediately transferred to a family limited partnership.  *Id.*  The plaintiff also alleged that
her brother transferred interests in his family residence to the same partnership, and that
he executed both of the transfers in order to defraud creditors.  *Id.*  The plaintiff specifically
requested that "the [loan and real property] transfers be voided to the extent necessary to

---

*Court,* 134 Cal.App.3d 883, 185 Cal.Rptr. 24 (1982); *Okuda v. Superior Court,* 144 Cal.App.3d 135, 192
Cal.Rptr. 388 (1983).

1   satisfy the claims set forth in her complaint." *Id.*  The California Supreme Court granted

2   review after both lower courts found that the fraudulent conveyance claim was plaintiff's

3   only claim relating to the real properties and was not a "real property claim" for the

4   purposes of the lis pendens statutes.  *Id.* at 646-647.

5        The California Supreme Court in *Kirkeby* looked to the plain language of California

6   Civil Code § 3439.07,[6] which sets forth the remedies available to a creditor bringing a

7   fraudulent transfer action, and concluded that a successful fraudulent transfer claim

8           may result in the voiding of a transfer of title of specific real property.
            By definition, the voiding of a transfer of real property will affect title to
9           or possession of real property.  Therefore, a fraudulent conveyance
            action seeking avoidance of a transfer [to the extent necessary to
10          satisfy the creditor's claim] clearly 'affects title to, or the right to
            possession of' real property and is therefore a real property claim for
11          the purposes of the lis pendens statutes.

12  *Id.* at 649.  Thus, the outcome of the case in *Kirkeby* was based on the plain meaning of

13  the statutory language in California Civil Code § 3439.07 and California Code of Civil

14  Procedure § 405.4.  *Kirkeby,* 33 Cal.4th at 649 (citing *Hunting World,* 22 Cal.App.4th at 73).

15  The court therefore held the defendants' argument that the court should look beyond the

16  face of the noticing party's pleading and examine the purpose of the complaint to be

17  unavailing.  *Id.* at 649-650 (declining to depart from application of the plain language of §

18  405.31 and its legislative history, which require courts "to consider only the specific claim

19  as pled[.]").

20       Additionally, the California Supreme Court in *Kirkeby* held that *Lewis* was "inapposite

21  and actually support[ed]" the court's conclusion, even though the California Court of Appeal

22  determined that the fraudulent transfer claim in that case was not a "real property claim."

23  *Id.* at 650.  In discussing *Lewis,* the California Supreme Court in *Kirkeby* noted that the

24  Court of Appeal held in that case that the party in interest pleaded a constructive trust claim

25  in substance, and only labelled the claim as a fraudulent transfer cause of action in form;

26

27  _____

    [6]    California Civil Code § 3439.07(a)(1) provides that "[i]n an action for relief against a transfer or
28  obligation under this chapter, a creditor, . . . may obtain: [a]voidance of the transfer or obligation to the extent
    necessary to satisfy the creditor's claim."

1    the party in interest did not allege any conveyance of property.  *Id.* (citing *Lewis,* 30

2    Cal.App.4th at 1865).  Thus, the *Lewis* court held that although a fraudulent conveyance

3    claim may support a lis pendens, no such claim was alleged in that case.  *Id.*  The

4    California Supreme Court distinguished the plaintiff's allegations in *Kirkeby* from the

5    allegations pleaded in *Lewis,* noting that the plaintiff in *Kirkeby* adequately alleged that the

6    defendant transferred title of the real property with the intent to defraud creditors.  *Id.*

7    Therefore, the California Supreme Court in *Kirkeby* held that the fraudulent transfer claim, if

8    successful, would affect title to specific real property.  *Id.*

9    　　　　Accordingly, *Kirkeby* directs courts applying the California expungement statutes to

10    proceed with a demurrer-like analysis of the noticing party's pleading.  That analysis must

11    avoid looking beyond the pleading to the noticing party's purpose, and instead focus on the

12    specific claim as pleaded.  Further, the trial court's analysis of the cause of action

13    underlying the asserted "real property claim" must begin with the plain language of that

14    cause of action.  *Id.* at 649 (discussing Cal. Civ. Code § 3439.07(a)(1)).

15    　　　　Defendants argue that under *Kirkeby,* "the only analysis that matters is whether a

16    plaintiff alleges a direct claim to title or possession."  *Defendants' Reply in Support of*

17    *Motion to Expunge,* ECF 79 at 9 (citing *Kirkeby,* 33 Cal. 4th at 649-650).  The court

18    disagrees with this argument because the California Supreme Court did not set forth a

19    "direct claim" standard in *Kirkeby,* and the holding in that case undermines Defendants'

20    argument.  Pursuant to California Civil Code § 3439.07(a)(1), the plaintiff in *Kirkeby* sought

21    to void a transfer of real property to satisfy her claim for nearly $5 million in money

22    damages, among other requested relief.  *Kirkeby,* 33 Cal. 4th at 646.  The court determined

23    that if plaintiff's fraudulent transfer claim was successful, "[b]y definition,"[7] the avoidance of

24    the transfer would "affect . . . title to, or the right to possession of, specific real property,"

25    California Code of Civil Procedure § 405.4.  *Id.* at 649.  Defendants are correct that the

26    California Supreme Court in *Kirkeby*, in reaching its conclusion, relied upon a statute which

27

28    [7]    *Id.* at 649.

-16-

allows a creditor to obtain "[a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim[,]" and, here, no similar statute exists.  *Id.* at 649.  Nothing in *Kirkeby* indicates, however, that a "real property claim" determination is limited to statutory causes of action.

In the absence of statutory language beyond 11 U.S.C. § 105(a), the court, guided by *Kirkeby*, therefore evaluates the plain effect and nature of an order granting substantive consolidation.  The court determines that an order consolidating Defendants' assets and liabilities with the bankruptcy estate would "affect . . . title to, or the right to possession of, specific real property," California Code of Civil Procedure § 405.4.  Accordingly, Plaintiffs' Substantive Consolidation Claim is a "real property claim" for the purposes of the California lis pendens statutes.

## 2.    The Effect of Substantive Consolidation

"A bankruptcy court's power of substantive consolidation has been considered part of the bankruptcy court's general equitable powers since the passage of the Bankruptcy Act of 1898."  *Alexander v. Compton (In re Bonham),* 229 F.3d 750, 763 (9th Cir. 2000) (citing *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 219 (1941) (hereinafter *"Sampsell"*)).  Although uncodified, the authority of a bankruptcy court to substantively consolidate the estate of a separate debtor or non-debtor derives from the court's "general equity powers as expressed in [11 U.S.C. § 105]."  *In re Bonham,* 229 F.3d at 764 (citation omitted) (hereinafter "*Bonham*"); *see also, In re Mihranian,* 937 F.3d at 1216 (citing *Bonham*).  The official commentary for the Federal Rules of Bankruptcy Procedure also acknowledges the propriety of substantive consolidation.  The Advisory Committee Note to Federal Rule of Bankruptcy Procedure 1015 provides that "[c]onsolidation, as distinguished from joint administration, is neither authorized nor prohibited by this rule since the propriety of consolidation depends on substantive considerations and affects the substantive rights of the creditors of the different estates."  *Id.* (citing *Sampsell*, 313 U.S. 215 (1941)).

In *Sampsell*, the Supreme Court "tacitly approved"[8] substantive consolidation of a non-debtor entity with a bankruptcy estate.  313 U.S. at 219-220 (reversing the judgment of the Circuit Court of Appeals and affirming the District Court's "order consolidating the estates").  Prepetition, the individual debtor in *Sampsell* had fraudulently transferred assets to a dummy corporation and in consideration received all of the corporation's stock.  *Id.* at 216-217.  After the bankruptcy referee ordered that the corporation's assets be turned over to the estate, a creditor of the non-debtor corporation requested priority as to the distribution of the consolidated corporation's assets.  *Id.* at 217.  The bankruptcy referee determined that the creditor, "with knowledge of [debtor's] indebtedness, was instrumental in getting him to form the corporation and had full knowledge of its fraudulent character." *Id.*  Thus, the bankruptcy referee disallowed the creditor's request for priority but permitted the creditor's claim as a general unsecured claim.  *Id.*  Because the Supreme Court affirmed the bankruptcy referee's determination that the creditor was "entitled only to *pari passu* participation" with debtor's other unsecured creditors, the court, "perhaps inadvertently,"[9] approved consolidation as a remedy to at once: (i) avoid a fraudulent transfer, (ii) subordinate an inequitable claim, and (iii) disregard legal forms to "absorb [non-debtor] assets into the bankruptcy estate" to satisfy the claims of a consolidated body of creditors.  *Id.* at 219 ("The power of the bankruptcy court to subordinate claims or to adjudicate equities arising out of the relationship between the several creditors is complete.") (citation omitted).

Accordingly, substantive consolidation is "an uncodified, equitable doctrine[,]" as observed by the Bankruptcy Appellate Panel of the Ninth Circuit,[10] that allows bankruptcy courts to "combine the assets and liabilities of separate and distinct—but related—legal entities into a single pool and treat them as though they belong to a single entity[,]" in the

---

[8]    *Bonham,* 229 F.3d at 764.

[9]    *In re Owens Corning,* 419 F.3d 195, 206 (3d Cir. 2005).

[10]    *Luxury Jewels, LLC v. Akers (In re Aronsakool),* BAP No. SC-13-1206-JuKuPa, 2014 Bankr. LEXIS 1234, 2014 WL 1273696, at *8 (9th Cir. BAP Mar. 28, 2014).

words of the Ninth Circuit in *Bonham,* 229 F.3d at 764.  In *Bonham*, the Ninth Circuit set

forth the legal standard for establishing a substantive consolidation claim and its effect on

non-debtor assets and liabilities if the claim is granted.  *Id.* at 766-771.  Defendants'

challenge to Plaintiffs' lis pendens is on grounds that the Amended Complaint does not

include a "real property claim" under California Code of Civil Procedure § 405.31, which

looks to the effect of a purported "real property claim" if meritorious.[11] Thus, the court's

analysis is limited to *Bonham*'s discussion of the effect of a substantive consolidation order

on the Properties.

In *Bonham,* the chapter 7 trustee initially brought fraudulent transfer claims against

numerous investors that had received assets from two non-debtor companies that the

individual debtor had used to engage in a Ponzi scheme.  229 F.3d at 759-760.  After the

investor-defendants moved to dismiss the trustee's fraudulent transfer claims for lack of

standing, the trustee filed a motion to substantively consolidate the debtor's estate with the

non-debtor companies *nunc pro tunc* to the petition date.  *Id.* at 760.  Discussing the

significant consequences of a substantive consolidation order, the Ninth Circuit noted "that

substantive consolidation 'is no mere instrument of procedural convenience . . . but a

measure vitally affecting substantive rights.'"  *Id.* at 762 (citation omitted).  A substantive

consolidation order allows a bankruptcy court to seriously affect the rights of non-debtor

third parties "in order to reach assets for the satisfaction of debts of a related [entity]." *Id.* at

764 (citation and internal quotation omitted).  Further, "[t]he consolidated assets create a

*single fund* from which all claims against the consolidated debtors are satisfied; duplicate

and intercompany claims are extinguished; and, the creditors of the consolidated entities

are combined for purposes of voting on reorganization plans."  *Id.* (emphasis added).  *See*

---

[11]     Defendants' challenge to Plaintiffs' lis pendens is not under California Code of Civil Procedure §
405.32 requiring expungement of a lis pendens *"*if the court finds that the claimant has not established by a
preponderance of the evidence the probable validity of the real property claim." Defendants did not move to
expunge the lis pendens in this case by challenging the "probable validity" of the Plaintiffs' "real property
claim" because the argument is that there is no such real property claim.  Under the "probable validity" test of
California Code of Civil Procedure § 405.32, the court would determine the probable validity of a substantive
consolidation claim, and the parties would be entitled to take discovery and submit evidence, but the court
does not decide the merits of any such potential claim here.

*also In re Owens Corning,* 419 F.3d 195, 206 (3d Cir. 2005) ("[Substantive consolidation] brings all the assets of a group of entities into a *single survivor*.") (emphasis added). Absent the authority to substantively consolidate, "debtors could insulate money through transfers among inter-company shell corporations with impunity." *Bonham,* 229 F.3d at 764.

Defendants contend that *Bonham* instructs courts to only "treat [consolidated assets] as though they belong to a single entity." *Id.* Defendants assert that such treatment falls short of affecting title to or possession of consolidated property. *Defendants' Reply in Support of Motion to Expunge,* ECF 79 at 7-8. Defendants' reliance on the phrase "as though," however, unduly minimizes the effect of substantive consolidation because substantive consolidation is a remedy "vitally affecting substantive rights." *Bonham,* 229 F.3d at 762 (citation and internal quotation omitted). The resulting "single fund"[12] or "single survivor"[13] is not a procedural construct that hardly affects ownership and control of consolidated assets. The single fund is the bankruptcy estate. The estate consists of all property that will be subject to the exclusive jurisdiction of the bankruptcy court, 28 U.S.C. § 1334(e)(1), and may be used to satisfy creditors' claims. *Elliott v. Weil (In re Elliott),* 523 B.R. 188, 192 (9th Cir. BAP 2014) ("When a debtor files a bankruptcy petition, all of his assets become property of the estate and may be used to pay creditors . . . ." (citation omitted)); 11 U.S.C. § 541(a)(1) (estate property includes "all legal or equitable interests of the debtor in property as of the commencement of the case"), § 541(a)(7) (estate property includes "[a]ny interest in property that the estate acquires after the commencement of the case.").

*Bonham* supports the proposition that upon issuance of a substantive consolidation order, the property of a consolidated non-debtor becomes property of the estate under 11 U.S.C. § 541. 229 F.3d at 766-767 (citing *Kroh Bros. Development Co. v. Kroh Bros. Management Co. (In re Kroh Bros. Dev. Co.),* 117 B.R. 499, 502 (W.D. Mo. 1989) (lien

---

[12] *Id.* at 764.

[13] *In re Owens Corning,* 419 F.3d at 206.

avoidance claims of non-debtor party that come into the bankruptcy estate are part of the estate *nunc pro tunc)); see also, Kismet Acquisition, LLC v. Icenhower (In re Icenhower),* 757 F.3d 1044, 1050 (9th Cir. 2014) (finding that non-debtor's real property became property of the bankruptcy estate as a result of substantive consolidation order).  A substantive consolidation order imposes bankruptcy court jurisdiction on non-debtor assets and therefore affects title to and possession of those assets.  *See Schwab v. Reilly,* 560 U.S. 770, 794 n. 21 (2010) ("Section 541 is clear that title to the [debtor's property] passed to [the bankruptcy] estate at the commencement of her case . . . ."); *Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi),* 764 F.3d 1168, 1178 (9th Cir. 2014) (debtors have "no right to possess or control estate property while it is property of the estate"); *cf. Giovanazzi v. Schuette (In re Lebbos),* BAP No. EC-11-1735-KiDJu, 2012 Bankr. LEXIS 5962, 2012 WL 6737841, at *8 (9th Cir. BAP Dec. 31, 2012) ("Because the bankruptcy court had jurisdiction over the [real property] by virtue of [11 U.S.C.] § 541(a) and 28 U.S.C. § 1334(e)(1), it had jurisdiction to enter [a judgment] vesting title to the [real property] in Trustee."); Federal Rule of Bankruptcy Procedure 7070 (allowing a bankruptcy court to "enter a judgment divesting the title of any party and vesting title in others whenever the real or personal property involved is within the jurisdiction of the court.").  Like the fraudulent transfer avoidance action in *Kirkeby,* here, "[b]y definition,"[14] the combining of a consolidated entity's assets and liabilities with the bankruptcy estate will affect title to or right to possession of any consolidated real property asset.

Substantive consolidation's relationship with fraudulent transfer law also demonstrates that a substantive consolidation claim is a "real property claim" that may support a lis pendens.  This court's decision in *In re Parkway Calabasas,* 89 B.R. 832 (Bankr. C.D. Cal. 1988), *aff'd,* 949 F.2d 1058 (9th Cir. 1991), preceded *Bonham* and was discussed therein.  *See Bonham,* 229 F.3d at 769.  In *Parkway Calabasas,* the bankruptcy court held that a fraudulent transfer claim arising from one debtor's pre-petition payment of

---

[14]    *Kirkeby,* 33 Cal. 4th at 649.

a debt that was owed by a separate debtor is rendered moot if the two estates are consolidated.  89 B.R. at 839 ("[s]ubstantive consolidation accomplishes the merger of the two estates . . . .").

The court's discussion of "the nature and consequences of substantive consolidation, and . . . fraudulent conveyance[,]" in *Parkway Calabasas* is instructive.  *Id.* at 836.  "[S]ubstantive consolidation substitutes a single debtor, a single estate with a common fund of assets, and a single body of creditors.  Assets and liabilities of each entity are pooled and inter-entity accounts and claims are eliminated."  *Id.* at 837 (citations omitted).  Where a putative consolidated non-debtor is an alleged transferee or indirect beneficiary of a fraudulent transfer—as is the case here—the impact of a substantive consolidation order is similar to the effect of a fraudulent transfer remedy.  Much like the effect of avoidance of a fraudulent transfer and recovery of the transferred asset, substantive consolidation eliminates the harm to a transferor's creditors and the unjust enrichment of a transferee or indirect beneficiary.  *Id.* at 839.  A substantive consolidation order remedies these ills by enlarging the asset pool available to pay the transferor's creditors and allowing those creditors to look to the assets of the transferee, or indirect beneficiary, for payment.  *Id.* ("Substantive consolidation . . . leav[es] no party unjustly enriched and no creditors looking to an impoverished asset pool for payment.").

Other courts' analysis of the relationship between fraudulent transfer and substantive consolidation claims comport with the Ninth Circuit authorities discussed above.  *See, e.g.*, *Luxury Jewels, LLC v. Akers (In re Aroonsakool),* BAP No. SC-13-1206-JuKuPa, 2014 Bankr. LEXIS 1234, 2014 WL 1273696, at *3 (9th Cir. BAP Mar. 28, 2014) (discussing the bankruptcy court's conclusion that a "request . . . to obtain standing to assert fraudulent conveyance theories as to transfers of [a] non-debtor's assets, is tantamount to a request for substantive consolidation."); *Schnelling v. Crawford (In re James River Coal Co.),* 360 B.R. 139, 172 (Bankr. E.D. Va. 2007) ("Substantive consolidation is a form of relief related to fraudulent transfer law. It is not strictly limited to cases in which fraudulent transfers have been proven. In fact, it can be an alternative to

1 fraudulent transfer litigation.").  In *In re Owens Corning*, the Third Circuit described the

2 "subtle differences" between "remedies for corporate disregard" such as veil piercing,

3 fraudulent transfer, equitable subordination, and substantive consolidation.  419 F.3d at

4 205-206.

5
6          Turnover and fraudulent transfer bring back to the transferor debtor
          assets improperly transferred to another (often an affiliate).
          Substantive consolidation goes in a direction different (and in most
          cases further) than any of these remedies; it is not limited to
          shareholders, it affects distribution to innocent creditors, and it
          mandates more than the return of specific assets to the predecessor
          owner. It brings all the assets of a group of entities into a single
          survivor.

7
8
9

10 *Id.* at 206.  In *In re James River Coal Co.,* the bankruptcy court for the Eastern District of

11 Virginia reached a similar conclusion regarding the interrelationship between veil piercing,

12 fraudulent transfer, and substantive consolidation.  360 B.R. at 172.

13          Ultimately, substantive consolidation (like veil-piercing) boils down to
          the issue of when the court should disregard the [entities'
14          separateness] because the [entities] involved effectively disregarded it
          themselves. When entities are effectively alter-egos and the allocation
15          of assets and liabilities between them is not based on economic reality,
          then the [structural separateness of the entities] should neither control
16          creditor recoveries nor put creditors in the position of spending
          inordinate amounts of time and money to prove fraudulent transfers.

17

18 *Id*.  As discussed above, the Supreme Court in *Sampsell* also addressed the interplay

19 between remedies such as equitable subordination, avoidance of fraudulent transfers, and

20 substantive consolidation, which all disregard corporate forms. 313 U.S. at 217-219

21 (recovering fraudulently transferred assets by consolidating non-debtor corporation with the

22 bankruptcy estate).  That substantive consolidation, like an avoidance action, disregards

23 legal forms to satisfy creditors' claims bolsters the conclusion that a substantive

24 consolidation claim may be a "real property claim" supporting a lis pendens.

25          In *Kirkeby,* the alleged "real property claim" under California Civil Code §

26 3439.07(a)(1) expressly provided for avoidance of a fraudulent or voidable transfer "to the

27 extent necessary to satisfy the creditor's claim."  Here, similarly, substantive consolidation

28 provides for recovering ostensibly non-debtor assets to satisfy claims against the estate.  2

Collier on Bankruptcy ¶105.09 [3], at 105-110-11 (16th ed. 2019) ("In general, substantive

consolidation results in the combination of the assets of both [entities] into a single pool

from which the claims of creditors of both [entities] are satisfied ratably.").  Accordingly,

substantive consolidation is a remedy similar to avoidance of a fraudulent transfer, and

such a cause of action may be a "real property claim."

Further, the effect of substantive consolidation is not diminished when a case

involves real property assets.  *In re Icenhower,* 757 F.3d at 1049 ("The court . . .

substantively consolidated [the non-debtor entity] with the bankruptcy estate, such that the

[real property] interest was part of the estate *nunc pro tunc* to the petition date."); *Sharp v.*

*Salyer (In re SK Foods, LP),* 499 B.R. 809, 843-844 (Bankr. E.D. Cal. 2013) (ordering

substantive consolidation where "the assets that will be consolidated into the Debtors'

estate consist of real property"); *cf. Committee of Tort Litigants v. Catholic Diocese of*

*Spokane (In re Catholic Bishop of Spokane),* 329 B.R. 304, 312-313 (Bankr. E.D. Wash.

2005) ("Even though a non-debtor entity may have a legal existence separate from the

debtor, that does not necessarily defeat substantive consolidation.  Nor does the fact that

title to real estate is held in the name of a non-debtor preclude a determination that the

debtor has an interest in that real estate.") (citation omitted).  The court has found no

authority indicating that the effect of an order for substantive consolidation is limited, or

altered, when the consolidated assets include real property.  A substantive consolidation

order transfers a consolidated entity's assets, including real property, to the bankruptcy

estate.  The consolidated assets are then available to satisfy the claims of the consolidated

creditors.  A substantive consolidation order involving real property therefore plainly affects

title to and possession of real property pursuant to California law.  California Code of Civil

Procedure § 405.4.  This result is consistent with *Kirkeby* and the plain language of

California Code of Civil Procedure § 405.4.

### 3.    <u>Plaintiffs' Allegations and Claims in the Amended Complaint</u>

Undertaking the "demurrer-like analysis" required by *Kirkeby*,[15] the court determines that the Amended Complaint states a "real property claim" under California Code of Civil Procedure section 405.4.  Plaintiffs allege in the Amended Complaint that Debtor and Defendants executed numerous unlawful transfers of Debtor's assets to, or for the benefit of, Defendants, *Amended Complaint,* ECF 9 at 18-28 (¶¶ 77-150, Claims for Relief I – XIV) (fraudulent transfer claims), including transfers in connection with the acquisition of the Properties, *id.* at 11 (¶ 44).  Plaintiffs also allege that Debtor and Defendants commingled their affairs and assets to such an extent that substantive consolidation is necessary to benefit the estate and creditors.  *Id.* at 11 (¶¶ 44-46), 14-16 (¶¶ 56-67), 31 (¶¶ 179-183).  Plaintiffs seek to avoid and recover the value of those allegedly fraudulent transfers but only request relief under fraudulent transfer theories as to the Bordbar Transfers, the Legal Fee Transfers, the Leya Transfers, the Plea and Settlement Transfers, and the BMW Transfer.[16]  *Id.* at 27-28 (¶¶ 143-150, Claims for Relief XIII and XIV).

As noted above, Plaintiffs, discussing the Bordbar Transfers, allege that the Bordbars "either transferred [cash] assets to the Bordbar Trust, or used these assets to purchase real estate or other assets, which they then transferred to the Bordbar Trust."  *Id.* at 11 (¶ 44).  Plaintiffs did not specifically allege, however, that the Bordbar Trust was an "immediate or mediate transferee" under California Civil Code § 3439.08(b)(1)(B) or 11 U.S.C. § 550.  Nor did Plaintiffs name the Bordbar Trust in the eleventh or twelfth claim for relief in the Amended Complaint, which request avoidance of fraudulent transfers under California common law.[17]  The court therefore considers the alleged transfers related to the Properties, *id.* at 11 (¶ 44), with the Substantive Consolidation Claim in mind, because Plaintiffs do not allege fraudulent transfer claims against the non-debtor Defendants as

---

[15]    33 Cal.4th at 647-648.

[16]    As discussed above at note 3, undefined capitalized terms included herein have the meaning ascribed to them as set forth in the Amended Complaint, ECF 9.

[17]    The court construes Plaintiffs' common law avoidance claims pursuant to the supplementary provisions of California Civil Code § 3439.12.  *See generally Jhaveri v. Teitelbaum,* 176 Cal.App.4th 740, 755 (2009) (citation omitted).

transferors under federal or state law.[18]  *Grimmett v. McCloskey (In re Wardle),* BAP No.
NV-05-1000-KMoB, 2006 Bankr. LEXIS 4817, 2006 WL 6811026, at *4-5 (9th Cir. BAP
2006) ("Unless and until [a non-debtor defendant] is a debtor, either by a filed bankruptcy
petition or by substantive consolidation, there is no . . . bankruptcy estate and, thus, the
trustee cannot pursue § 547 and § 548 actions in its name. [. . .] [T]he only way the . . .
trustee could avoid the transfers of property that belonged to [the non-debtor defendant]
would be for [the non-debtor defendant] to become a debtor and for the cases to
substantively consolidate under [trustee's] control."); *Krohn v. Stipp (In re Plise),* No. 2:14-
cv-00169-JAD-PAL, 2015 U.S. Dist. LEXIS 111143, 2015 WL 4997296, at *2 (D. Nev.
2015) (quoting the bankruptcy court's order dismissing, without prejudice, trustee's
fraudulent transfer and alter ego claims against non-debtor transferors: "trustee must now
decide what she wants to do with regard to her claims for fraudulent conveyance, in
particular, and whether substantive consolidation will allow her [standing] to [avoid transfers
by non-debtor defendants]."); *see also Spradlin v. Beads & Steeds Inns, LLC (In re
Howland),* 674 Fed. Appx. 482, 488 (6th Cir. 2017) ("[S]everal courts have held that
substantive consolidation allows a trustee to bring avoidance claims involving transfers by
the consolidated non-debtor entity—exactly what the trustee seeks to do here.").

Here, Plaintiffs have alleged that Debtor fraudulently transferred cash assets to the
Bordbars, who then either: (i) fraudulently transferred those same assets to the Bordbar
Trust, or (ii) used those assets to purchase the Properties, which the Bordbars then
transferred to the Bordbar Trust.  *Amended Complaint,* ECF 9 at 11 (¶ 44).  As discussed
above, an amended substantive consolidation claim brought against the Bordbars, the
Bordbar Trust, and Leya Technologies, if meritorious, will affect title to or possession of the
Properties.  Here, an order granting substantive consolidation would bring the Properties

---

[18]    *See generally* California Civil Code §§ 3439.04(a) ("A transfer made or obligation incurred by a debtor
is voidable . . . ."), 3439.05(a) (same); 11 U.S.C. §§ 544(a) ("The trustee . . . may avoid any transfer of
property of the debtor or any obligation incurred by the debtor that is voidable . . ."), 544(b)(1) ("the trustee
may avoid any transfer or an interest of the debtor in property or any obligation incurred by the debtor that is
voidable . . ."), 548(a)(1) ("The trustee may avoid any transfer . . . of an interest of the debtor in property, or
any obligation . . . incurred by the debtor . . . .").

1  into the bankruptcy estate for the benefit of creditors pursuant to 11 U.S.C. §§ 105 and

2  541(a).  Under the plain language of California Code of Civil Procedure § 405.4, Plaintiffs'

3  Amended Complaint had included a substantive consolidation cause of action that, if

4  meritorious, would affect "title to, or the right to possession of, specific real property," and

5  while that claim has been dismissed, Plaintiffs have leave of court to file an amended

6  substantive consolidation claim.

7  ### ii.    IT WOULD BE PREMATURE TO EXPUNGE THE LIS PENDENS

8  Plaintiffs contend that it would be inappropriate to expunge the lis pendens at this

9  juncture because the court dismissed the Substantive Consolidation Claim without

10  prejudice and with leave to amend.  *Plaintiffs' Opposition to Motion to Expunge Lis*

11  *Pendens,* ECF 77 at 6-9 (citing *inter alia McGhee v. Deutsche Bank National Trust Co.*, No.

12  EDCV1300281VAPOPX, 2013 WL 12137104, at *8 (C.D. Cal. May 29, 2013); *McGough v.*

13  *Wells Fargo Bank, N.A.*, No. C12-0050 TEH, 2012 U.S. Dist. LEXIS 84327, 2012 WL

14  2277931, at *9 (N.D. Cal. June 18, 2012); *Gomez v. Plaza Home Mortg., Inc.*, No.

15  09cv2855-L(RBB), 2011 U.S. Dist. LEXIS 27444, 2011 WL 940762, at *5 (S.D. Cal. Mar.

16  17, 2011)).  Although the authorities cited by Plaintiffs are generally unreported cases, the

17  court agrees that expunging the lis pendens before reaching the merits of any amended

18  substantive consolidation claim, which the court determines is a "real property claim," would

19  be premature.  The court, however, notes the possible prejudice to Defendants if Plaintiffs

20  are permitted to indefinitely maintain the lis pendens while the Substantive Consolidation

21  Claim hangs in abeyance.

22  During the April 30, 2020 hearing on the Motion, the court acknowledged that its

23  December 2019 Order imposed a burden on Defendants by allowing amendment of the

24  Substantive Consolidation Claim without specifying a deadline for amendment.  *April 30,*

25  *2020 Hearing on Defendants' Motion to Expunge Lis Pendens* at 12:01-12:03 p.m., Adv.

26  No. 2:19-ap-01332-RK.  Noting the potential unfairness in having an open-ended time to

27  amend, the court indicated that it was inclined to grant in part and deny in part Defendants'

28  Motion.  *Id.* at 12:10-12:14 p.m.  The court determined that the Motion should be

1   conditionally granted in part to expunge the lis pendens, assuming Plaintiffs fail to amend

2   the Substantive Consolidation Claim within 90 days of the entry of this memorandum

3   decision and concurrent order.  *Id.*  The court finds that 90 days is a reasonable time

4   permitting Plaintiffs to undertake discovery and identify non-debtor Defendants' creditors

5   before filing an amended substantive consolidation claim.  In other words, the lis pendens

6   will be expunged if Plaintiffs fail to amend the Substantive Consolidation Claim within the

7   reasonable time set by the court.  *Id.*

8       The court, thus, conditionally grants the Motion in part and orders the lis pendens

9   expunged if Plaintiffs do not file an amended substantive consolidation claim within 90 days

10  of the entry of this decision and concurrent order.

11
       iii.    **PLAINTIFFS ARE NOT PRECLUDED FROM BRINGING ANY AMENDED SUBSTANTIVE CONSOLIDATION CLAIM IN THIS ADVERSARY PROCEEDING**
12

13       Defendants argue, in the alternative, that "even if the Court were to accept . . . that

14  substantive consolidation is a 'real property claim' . . . there is no 'real property claim' *in this*

15  *case* because the substantive consolidation claim must be refiled, if at all, in a separate

16  proceeding."  *Defendants' Reply in Support of Motion to Expunge,* ECF 79 at 10-11 (citing

17  California Code of Civil Procedure § 405.20).  Defendants contend that any amended

18  substantive consolidation claim cannot be refiled in this action based on the court's

19  December 2019 Order.  ECF 79 at 11 (citing *Order Granting in Part and Denying in Part*

20  *Defendants' Motion to Dismiss Plaintiff's First Amended Complaint*, ECF 57 at 2).

21  Defendants' position, however, overstates the court's ruling.  In the December 2019 Order,

22  the court stated:

23
24
25
> As suggested by the court, if Plaintiff intends to file an amended substantive consolidation claim or motion, he should file it as a separate proceeding so that the creditors of debtor and the nondebtor party defendants need not involve themselves in the other claims in this adversary proceeding.

26  ECF 57 at 2.

27       The court suggested that Plaintiffs file any amended substantive consolidation claim

28  separately from this adversary proceeding.  It does not follow that "the substantive

1  consolidation claim cannot be refiled in *this* action[.]"  ECF 79 at 11.  The court's suggestion

2  was pursuant to the court's case management authority under 11 U.S.C. § 105 and based

3  on interests of efficiency and fairness to all parties in interest.  *April 30, 2020 Hearing on*

4  *Defendants' Motion to Expunge Lis Pendens* at 12:10-12:12 p.m., Adv. No. 2:19-ap-01332-

5  RK.  The court's suggestion was permissive, not mandatory.

6        Moreover, Plaintiffs addressed the technical requirement in California Code of Civil

7  Procedure § 405.20 during the April 30, 2020 hearing on the Motion.  *April 30, 2020*

8  *Hearing on Defendants' Motion to Expunge Lis Pendens* at 11:38-11:40 a.m., Adv. No.

9  2:19-ap-01332-RK (statements of Plaintiffs' counsel) ("If necessary, we will amend [the

10  substantive consolidation claim], amend this complaint, and bring [the substantive

11  consolidation claim] in this complaint, if that is what is required to keep the lis pendens on.

12  The fact that we have the opportunity to not bring this again, or to bring it in a separate

13  proceeding, shouldn't change the conclusion that granting the Motion to Expunge would be

14  premature."); *id.* at 12:25-12:28 p.m. (statements of Plaintiffs' counsel suggesting Plaintiffs

15  first bring any amended substantive consolidation claim in this adversary proceeding, then

16  seek to sever the claim into a separate adversary proceeding).

17        The facts of this case are perhaps usual because no purported "real property claim"

18  is currently before the court since the one claim was dismissed.  However, that one claim,

19  the Substantive Consolidation Claim, is derived from the Amended Complaint, and that

20  claim has been dismissed without prejudice, but with leave to amend, so as discussed

21  above, expungement while leave to amend is pending would be premature.  The court finds

22  that its suggestion in the December 2019 Order, ECF 57 at 2, does not preclude Plaintiffs

23  from satisfying the technical requirements of California Code of Civil Procedure § 405.20

24  and bringing any amended substantive consolidation claim in this action.

25      **iv.**   **DEFENDANTS' REQUEST FOR FEES AND COSTS IS DENIED**

26        Defendants contend that Trustee recorded the lis pendens on the Properties without

27  "substantial justification," such that the court should award Defendants their attorneys' fees

28  and costs as a prevailing party pursuant to California Code of Civil Procedure § 405.38.

1     *Motion to Expunge Lis Pendens,* ECF 63 at 13-14.  The court adopts its tentative ruling as

2     set forth on the record during the April 30, 2020 hearing, denying the Motion as to the

3     request for fees and costs.  *April 30, 2020 Hearing on Defendants' Motion to Expunge Lis*

4     *Pendens* at 12:13–12:15 p.m., Adv. No. 2:19-ap-01332-RK.  During the hearing, the court

5     noted that neither party disputed that whether a substantive consolidation claim may be a

6     "real property claim" under California law was an issue of first impression.  *Id.*  Even if the

7     court would grant the Motion, the court determines that there is substantial justification for

8     asserting that a substantive consolidation order would "affect . . . title to, or the right to

9     possession of, specific real property[.]"  California Code of Civil Procedure § 405.4.

10            **v.    THE NUNC PRO TUNC QUESTION IS NOT RIPE FOR ADJUDICATION**

11         In their Supplemental Brief, Defendants argue that the Supreme Court's decision in

12     *Acevedo*[19] "is inconsistent with granting substantive consolidation *nunc pro tunc.*"

13     *Defendants' Supplemental Brief,* ECF 86 at 3.  Defendants contend that "since substantive

14     consolidation can be granted, if at all, only prospectively, and not *nunc pro tunc* to the

15     commencement of the . . . bankruptcy case," the Properties cannot be property of the

16     bankruptcy estate, and therefore, the Substantive Consolidation Claim cannot be a "real

17     property claim" under the California expungement statutes.  *Id.* at 4 (citing 11 U.S.C. §

18     541(a)(1)).

19         In their Supplemental Brief, Plaintiffs assert that Defendants' reliance on *Acevedo* is

20     misplaced because *nunc pro tunc* substantive consolidation orders are permissible under

21     *Acevedo*.  Plaintiffs contend, in the alternative, that *Acevedo* is inapposite because the

22     decision does not affect whether a substantive consolidation claim is a "real property claim"

23     under California law.  *Plaintiffs' Supplemental Brief,* ECF 87 at 3-4.  Plaintiffs also note that

24     11 U.S.C. § 541(a)(7) provides that the bankruptcy estate includes "[a]ny interest in

25     property that the estate acquires after the commencement of the case[,]" and therefore any

26     prospective substantive consolidation order does not alter the order's effect on title to or

27

28     [19]     *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano,* 140 S. Ct. 696 (2020).

1   possession of real property.  *Id.* at 4-5.

2        Plaintiffs seem to have the better argument.  "Property of the estate includes 'any

3   interest in property that the estate acquires after the commencement of the case.'"  *Carroll*

4   *v. Tri-Growth Centre City Ltd. (In re Carroll),* 903 F.2d 1266, 1270 (9th Cir. 1990) (citing 11

5   U.S.C. § 541(a)(7)); *see also MacKenzie v. Neidorf (In re Neidorf),* 534 B.R. 369, 371 (9th

6   Cir. BAP 2015) ("Section 541(a)(7) makes property of the estate any interest in property

7   that the estate (not the debtor) acquires after the petition date.").  Defendants ask the court

8   to ignore entire subsections of 11 U.S.C. § 541(a)[20] and find that all estate property

9   acquired after the petition date—whether by turnover,[21] substantive consolidation, or

10  otherwise—must somehow be retroactively acquired as of the commencement of the

11  bankruptcy case, while also not disturbing the Supreme Court's recent holding in *Acevedo.*

12  A substantive consolidation order, whether prospective or *nunc pro tunc* to the petition

13  date, makes the assets of a consolidated entity property of the estate.  As discussed

14  above, a substantive consolidation claim therefore affects title to or right to possession of a

15  putative consolidated non-debtor's property.

16       Further, the Motion before the court seeks expungement of two lis pendens under

17  the "real property claim" prong of California's expungement statutes, California Code of

18  Civil Procedure § 405.4.  The court agrees with Plaintiffs that "whether substantive

19  consolidation is ordered *nunc pro tunc* or merely prospectively . . . [only] alters the date

20  upon which the effect is deemed to have occurred."  *Plaintiffs' Supplemental Brief,* ECF 87

21  at 4.  Before *Acevedo,* bankruptcy courts in the Ninth Circuit had been permitted to

22  substantively consolidate non-debtor estates *nunc pro tunc* under certain circumstances.

23  *Bonham,* 229 F.3d at 763 ("The bankruptcy court did not err in substantively consolidating

24  the estates, nor in doing so *nunc pro tunc.*").  After *Acevedo,* that authority may be in doubt.

25  *In re Telles,* No. 8-20-70325-reg, Ch. 13, 2020 Bankr. LEXIS 1167, 2020 WL 2121254, at

26

27  [20]    *See, e.g.*, 11 U.S.C. § 541(a)(3) ("Any interest in property that the trustee recovers [after the commencement of the case] under section 329(b), 363(n), 543, 550, 553, or 723 of this title."), (a)(7) ("Any interest in property that the estate acquires after the commencement of the case.").

28  [21]    11 U.S.C. § 542.

1   *4 (Bankr. E.D.N.Y. Apr. 30, 2020) ("The landscape of the law is different post-*Acevedo*,

2   and [the bankruptcy court] is bound to follow the precedent set by the Supreme Court.").

3   Defendants may be correct that *Acevedo* precludes the court from using "a *nunc pro tunc*

4   order to give effect to an order of substantive consolidation before such time that the court

5   actually intended to enter an order of substantive consolidation." *Defendants'*

6   *Supplemental Brief,* ECF 86 at 5.  Plaintiffs argue that *nunc pro tunc* substantive

7   consolidation orders survive *Acevedo* because the orders "'reflect the reality' of what has

8   already occurred." *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo*

9   *Feliciano,* 140 S. Ct. 696, 700-701 (2020) (quoting *Missouri v. Jenkins,* 495 U.S. 33, 49

10  (1990)).  Whether *Bonham* and *Acevedo* may co-exist regarding the issuance of

11  substantive consolidation orders *nunc pro tunc*, however, is not ripe for adjudication here.

12  It would be premature for the court to issue, in essence, an advisory opinion on the merits

13  of any to-be-filed amended substantive consolidation claim and the relief requested therein.

14      Accordingly, the court determines that *Acevedo* does not affect whether a

15  substantive consolidation claim may be a "real property claim" under California law.  The

16  court will address any request for relief when, or if, Plaintiffs file an amended substantive

17  consolidation claim.  The court declines to decide whether, after *Acevedo*, courts in the

18  Ninth Circuit may issue an order for substantive consolidation *nunc pro tunc* to the petition

19  date.

### III.    CONCLUSION

21  For the foregoing reasons, the Motion is granted in part and denied in part as the

22  court determines the following:

23  1.  The Motion is denied to the extent that Defendants seek expungement of the two lis

24      pendens under California Code of Civil Procedure §§ 405.20, 405.30, 405.31, and

25      405.4 at this time.

26  2.  The Motion is conditionally granted in part and the lis pendens ordered expunged

27      only if Plaintiffs do not file an amended substantive consolidation claim within 90

28      days of the entry of this memorandum decision and order thereon.

3.  The Motion is denied to the extent that Defendants seek an award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 405.38.

4.  The Motion is denied to the extent that Defendants seek expungement of the lis pendens following the Supreme Court's decision in *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano,* 140 S. Ct. 696 (2020), and such denial is without prejudice.

IT IS SO ORDERED.

###

Date: July 7, 2020

Robert Kwan
United States Bankruptcy Judge